## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SHEILA REYES-ORTA, et al.

    Plaintiffs,

          v.

    **Civil No. 11-1410 (SEC)**

HIGHWAY AND TRANSPORTATION
AUTHORITY, et al.

    Defendants.

## OPINION and ORDER

Before the Court are co-defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket # 21), and plaintiffs' opposition thereto (Dockets # 31). After reviewing the filings and the applicable law, co-defendants' motion is **GRANTED** in part and **DENIED** in part.

### Factual and Procedural Background

Sheila Reyes-Orta and her husband (collectively, "Plaintiffs") filed this political discrimination suit pursuant to the U.S. Constitution and the laws of the Commonwealth of Puerto Rico. Docket # 1. Defendants are Reyes-Orta's former employer, the Puerto Rico Highway and Transportation Authority (the "Highway Authority"), Ruben Hernandez-Gregorat, Puerto Rico's Secretary of Transportation and the Executive Director of the Highway Authority, Brenda Gomila-Santiago, the Director of Human Resources at the Highway Authority, and Cesar Maldonado-Vazquez, a Labor Relations Specialist at the Highway Authority. Id. The individual defendants ("Co-defendants") are sued in their official and personal capacities.[1]

In her complaint, Reyes-Orta claims having been fired from her career post due to her political affiliation with the Popular Democratic Party ("PDP"). Id. She seeks monetary compensation for her alleged grievances as well as equitable relief in the form of full

---

[1] The Highway Authority neither joined Co-defendants' motion to dismiss nor moved to dismiss independently.

reinstatement to all her functions at the Highway Authority. Id. Co-defendants timely moved to dismiss under Fed. R. Civ. P. Rule 12(b)(6), arguing that (1) the complaint contains no facts to establish a constitutional violation; (2) the constitutional claims are time barred; and (3) Reyes-Orta is barred from asserting tort claims under Puerto Rico law. Docket # 21.[2] Plaintiffs oppose each of these contentions. Docket # 31. The relevant facts, as avered in the complaint, follow.

Reyes-Orta has been a public sector employee for almost three decades. She is an open and active member of the PDP and has participated in PDP meetings and election campaigns. At the Highway Authority, she was a member of the PDP employee association, and, during the 2004-2008 PDP Administration, she directed the Human Resources Program as a trust employee.

Co-defendant Hernandez-Gregorat, a member of the New Progressive Party ("NPP"), became the Director of the Highway Authority after the 2008 general elections. Upon taking office, he ordered an audit to examine the possible nullity of transfers, appointments, and promotions made during prior PDP administrations. In September 2009, the person hired to conduct the audit met with Reyes-Orta and fellow supervisors at the Highway Authority to explain the purpose of the audit. At the meeting, "[i]n no uncertain terms, [the auditor]

---

[2] Co-defendants also contend that (1) no individual liability exists under Law 100, P.R. Laws Ann. tit. 29, § 146 et seq., one of the Commonwealth statutes that Plaintiffs rely upon; (2) Reyes-Orta's husband lacks standing to sue under 42 U.S.C. § 1983; and (3) Reyes-Orta's claims against Hernandez-Gregorat in his official capacity as Secretary of Transportation are misplaced. The first argument has been rejected many times before. See e.g., Rosario-Toledo v. Distribuidora Kikuet, Inc., 151 P.R. 634 (2000); Pacheco-Bonilla v. Tooling & Stamping, Inc., 281 F.Supp.2d 336, 339-40 (D.P.R. 2003). The second, is also unavailing because none of the claims of Reyes-Orta's husband are premised on § 1983. His claims arise under P.R. Laws Ann. tit. 31, §§ 5141 and 5142, which provide for the relief he seeks. See Gonzalez-Figueroa v. J.C. Penny P.R., Inc., 568 F.3d 313, 319-20 (1st Cir. 2009). As to the third, Reyes-Orta official capacity suit against Hernandez-Gregorat arises in connection with his role as Executive Director of the Highway Authority. No relief is sought against him in connection with his role as Secretary of Transportation. Accordingly, no further discussion is needed as to these claims; Co-defendants' motion to dismiss them is **DENIED**.

specifically stated that she was going to find arguments to nullify as most transactions as possible, and that all affected . . . had to defend themselves as best as they could." Docket 1, ¶ 36. Hernandez-Gregorat later elaborated on the scope of the audit at another meeting, stating "that he had to dismiss close to 1,000 employees . . . that it was a shame that they had to be of mixed political ideology, but that he was sure that the greater number of those to be affected were members of the PDP." Docket # 1, ¶ 34.

In December 2009, Hernandez-Gregorat sent a letter to Reyes-Orta notifying her that the audit had shown her appointment to be invalid. Then, on May 5, 2010, after a failed administrative challenge, Reyes-Orta was terminated from her employment pursuant to the audit.

Plaintiffs present a second factual scenario as alternative grounds for their claims. In April 2009, El Nuevo Dia newspaper published an article divulging the salaries of all trust employees at the Highway Authority. Reyes-Orta was accused of having provided the information to the newspaper, and an investigation was launched against her. The investigation, however, failed to incriminate Reyes-Orta. And as a result, the person in charge of it, the former Executive Director of Human Resources at the Highway Authority, was forced to resign. According to Reyes-Orta, "he was not willing to be pressured into any type of biased conclusion in his investigation and . . . as a result of this he was forced to resign from his position on May 26, 2009." Docket # 1, ¶ 21. Moreover, Reyes-Orta alleges that this person can attest that Co-defendants knew about her affiliation with the PDP.

Hernandez-Gregorat appointed Gomila-Santiago as the new Executive Director of Human Resources. Gomila-Santiago in turn assigned Maldonado-Vazquez to conduct a second investigation against Reyes-Orta.[3]  Both Gomila-Santiago and Maldonado-Vazquez

---

[3]  Maldonado-Vazquez and Reyes-Orta's paths had crossed in the past. During Reyes-Orta's tenure as Director of Human Resources, she terminated Maldonado-Vazquez's employment on insubordination charges. The termination, however, was overturned on appeal.

are members of the NPP.

On August 31, 2009, Maldonado-Vazquez interviewed Reyes-Orta in connection with the second investigation. During the interview, he admitted knowing Reyes-Orta's affiliation with the PDP and allegedly told her "that all employees that are going to be terminated from the PDP administration are going to lose any administrative and/or legal proceedings against the Highway Authority." Docket # 1, ¶ 28. Moreover, by Maldonado-Vazquez's "own admissions, at all relevant times, defendants were fully aware of [Reyes-Orta's] political affiliation . . . ." Id. at ¶ 4. Reyes-Orta informed her superiors about Maldonado-Vazquez's discriminatory remarks but no corrective action was ever taken.

While the investigation against Reyes-Orta proceeded, Gomila–Santiago took "away practically all functions and duties inherent to plaintiff's position, particularly those related to job position analysis." Id. at ¶ 30. Among other things, Gomila-Santiago ordered "that [Reyes-Orta] be left without access to the computerized database of the Human Resources Office, therefore effectively impeding [the] performance of the duties and responsibilities pertaining to her career position." Id. at ¶ 31. Then, on March 19, 2010, Gomila-Santiago moved Reyes-Orta "through an administrative transfer to another office not related to Human Resources." Id. at ¶ 41. Less than two months thereafter Reyes-Orta's employment was officially terminated. The termination and the events leading up to it negatively impacted Reyes-Orta's husband.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Twombly, 550 U.S. 544. The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or

inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559 (cited in Rodriguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007)). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility  that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Iqbal, 556 U.S. 662, the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id., at 1949. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

6

suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Twombly, 550 U.S. at 556. Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id., at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id., at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id., at 1950.

The aforementioned requirements complement a bedrock principle of the federal judicial system: a complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernandez, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, "[w]hile a plaintiff's claim to relief must be supported by sufficient factual allegations to be plausible under Twombly [and Iqbal], nothing requires a plaintiff to prove her case in the pleadings." Chao v. Ballista, 630 F.Supp. 2d 170, 177 (D.Mass. 2009). Put differently, even after Twombly and Iqbal, "[d]ismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernandez, 640 F.3d at 11.

A different standard applies when dismissal is sought under Rule 12(b)(6) pursuant to a statute of limitations affirmative defense. Under this scenario, dismissal may be

7

appropriate if "the facts that establish the defense . . . [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Jones v. Bock, 549 U.S. 199, 215 (2007). Thus, even though a complaint need not plead facts to avoid potential affirmative defenses, plaintiffs could plead themselves "out of court by alleging facts that are sufficient to establish the defense." Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

**Applicable Law and Analysis**

*I. Claims under the U.S. Constitution*

The Court's analysis begins with 42 U.S.C. § 1983, which is the statutory predicate for vindicating federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989). To prove liability under § 1983, a "plaintiff[] must show by a preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). Moreover, under § 1983, government officials may only "be held liable if the plaintiff can establish [a] constitutional injury result[ing] from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007) (internal quotation marks omitted). A plaintiff must  therefore link each individual defendant to the alleged violation of federal rights. Gonzalez-Piña v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005). In other words, each defendant responds for his own acts or omissions in light of his duties; there is no liability on the basis of *respondeat superior*. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994); Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Furthermore, the actionable conduct must be intentional, grossly negligent, or with reckless or callous indifference to established constitutional rights. Gutierrez-Rodriguez v.

Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986).

Here, Plaintiffs' complaint satisfies the first prong of the § 1983 analysis, as all the decisions at issue in this case were taken under color of state law. Co-defendants do not dispute this point. They contend instead that Plaintiffs' complaint fails to state a violation of a constitutional right. Below the Court addresses each of Co-defendants' contentions in turn.

### A. First Amendment Political Discrimination Claims

Political discrimination is proscribed by the First Amendment of the United States Constitution. Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). As the First Circuit has remarked: "The right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico ex rel. Justice Dep't., 494 F.3d 1, 4 (1st Cir. 2007). "[T]he First Amendment protects associational rights . . . [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F. 3d 26, 28 (1st Cir. 2004). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; Carrasquillo, 494 F.3d at 4 (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980)). This protection extends to career employees, transitory employees, and independent contractors. Martinez-Baez v. Rey-Hernandez, 394 F. Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)).

The First Amendment's protection against political discrimination also extends to other adverse employment actions, such as "promotions, transfers, and recalls after layoffs based on political affiliation or support . . . ." Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990); Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 767 (1st Cir. 2010). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position

at issue." <u>Carrasquillo</u>, 494 F.3d at 4 (internal citations omitted); <u>Rodriguez-Garcia</u>, 610 F.3d at 767.

Political discrimination claims must be reviewed through a burden-shifting scheme. <u>Mt. Healthy City Board of Ed. v. Doyle</u>, 429 U.S. 274, 287 (1977) (superseded on different grounds). The initial burden rests with the plaintiff, who must first show that "he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision."  <u>Id.</u>; <u>see also</u>  <u>Carrasquillo</u>, 494 F.3d at 4; <u>Padilla-Garcia v. Rodríguez</u>, 212 F. 3d 69, 74 (1st Cir. 2000). To shift the burden to the defendant, a plaintiff must make the following four showings: (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) that the defendant has knowledge of the plaintiff's opposing political affiliation; (3) that there is an adverse employment action; and (4) that there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's actions. <u>Peguero-Moronta v. Santiago</u>, 464 F.3d 29, 48 (1st Cir. 2006); <u>see also</u> <u>Monfort-Rodriguez v. Rey-Hernandez</u>, 599 F. Supp. 2d 127, 168 (D.P.R. 2008). Of course, these four showings must be made by a preponderance of the evidence as to each individual defendant.

In this case, Co-defendants contest Reyes-Orta's political discrimination claims on two grounds. First, they argue that her complaint "failed to allege sufficient facts to raise a reasonable inference that Defendants had knowledge of her political affiliation with the PDP." Docket # 21, p. 12. Reyes-Orta's complaint, however, makes the requisite allegations in at least two different instances. <u>See</u> Docket # 1, ¶ 22 (alleging that the former Executive Director of Human Resources can attest that Co-defendants knew about Reyes-Orta's affiliation with the PDP); <u>Id.</u> at ¶ 4 (alleging that on Maldonado-Vazquez's "own admissions, at all relevant times defendants were fully aware of [Reyes-Orta's] political affiliation"). The Court, as it must, credits these allegations at this stage. <u>Ocasio-Hernandez</u>, 640 F.3d at 12-13. Co-defendants' contentions on this front therefore fail.

Co-defendants next argue that Reyes-Orta's "ultimate termination from her

employment was done pursuant to the disposition of the audit conducted to her personnel file and thus, her political affiliation was not the 'but-for' cause of said employment action . . . ." Docket # 21, pgs. 13-14. In other words, Co-defendants claim that the audit gave them valid nondiscriminatory reasons for Reyes-Orta's termination, a defense to liability under Mt. Healthy, 429 U.S. at 286-87. Nevertheless, Co-defendants nowhere address Reyes-Orta's allegations that the audit came about for discriminatory reasons nor the allegations that Hernandez-Gregorat overtly conceded the point during a meeting with Reyes-Orta and her fellow supervisors. Docket # 1, ¶¶ 32-37. These allegations suffice to discard Co-defendants' Mt. Healthy defense at this stage of the proceedings. Ocasio-Hernandez, 640 F.3d at 12-13; see also, People United for Children, Inc. v. City of New York, 108 F.Supp.2d 275, 296 n. 14 (S.D.N.Y. 2000) (noting that the Mt. Healthy defense "is inappropriate at the motion to dismiss stage because the parties have not yet engaged in any significant discovery."). Accordingly, the Court need not go further on this issue. Co-defendants motion to dismiss Reyes-Orta's political discrimination claims is **DENIED** for these reasons.

### B. First Amendment Conspiracy Claims

In this Circuit, a conspiracy claim may be actionable under § 1983. Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Two requisites must be satisfied: "plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim." Id. (quoting Hampton v. Hanrahan, 600 F.2d 600, 622 (7th Cir. 1979), rev'd in part on other grounds, 446 U.S. 754 (1980). "The gist of the section 1983 action is the deprivation and not the conspiracy. Conspiracy is merely the mechanism by which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy." Landrigan, 628 F.2d at 742 (internal quotations and citations omitted). Nevertheless, a conspiracy claim must be alleged through specific facts, setting forth both "the existence and scope of the conspiracy." Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977). The Circuit Court's mandate is unequivocal in this regard: a "complaint cannot

11

survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with reference to material facts." Id. (citing relevant Circuit case law).

Co-defendants' challenge to Reyes-Orta's conspiracy claim rely on the specificity requirements just described. They contend that Reyes-Orta "has clearly failed to assert overt acts carried by the appearing defendants in furtherance of the alleged conspiracy claimed to exist." Docket # 21, p. 19. Co-defendants are correct insofar as Reyes-Orta's complaint nowhere alludes to an overt conspiratory agreement between Co-defendants. The complaint, however, contains specific factual allegations regarding Co-defendants' concerted efforts to find reasons to fire Reyes-Orta due to her political affiliation. Among other things, these allegations include the forced resignation of her direct supervisor, the reopening of a closed investigation against Reyes-Orta; the appointments of Gomila-Santiago and Maldonado-Vazquez  (the latter a bitter and bias rival) to lead the second investigation; Maldonado-Vazquez's discriminatory treatment toward Reyes-Orta; her unattended complaints about such treatment; and Gomila-Santiago's pre-termination employment decisions against Reyes-Orta. With discovery just beginning, these allegations taken as a whole support an inference in favor of Reyes-Orta's claims. Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011) (stating that at the motion to dismiss stage, the court must "draw all reasonable inferences . . . in the pleader's favor"). With the proper evidentiary support, Co-defendants may reassert their challenge at the summary judgement stage. For now, however, their contentions on this issue are **DENIED**.

### C. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause of the U.S. Constitution establishes that "persons similarly situated must be accorded similar governmental treatment." Marrero-Gutierrez  v. Molina, 491 F.3d 1, 9 (1st Cir. 2007). The First Circuit, however, has mandated district courts to disregard equal protection claims that overlap with an asserted First Amendment political discrimination claim. See e.g., Colon-Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992). Co-defendants cling to this mandate, stating that Reyes-Orta's

12

equal protection claim "is merely a restatement of her First Amendment claim . . . ." Docket # 21, p. 14. Plaintiffs present no argument in opposition. Instead, they spend three-and-a-half pages discussing political discrimination cases, which implicitly proves Co-defendants' contentions. For these reasons, Co-defendants' motion to dismiss Reyes-Orta's equal protection claim is **GRANTED**.

### D. Fourteenth Amendment Due Process Claims

The Fourteenth Amendment of the U.S. Constitution protects against deprivation of life, liberty, or property without due process of law "and guards against any encroachment on those rights by federal or state authority." Kwong Hai Chew v. Colding, 344 U.S. 590, 596-597, n. 5 (1953); see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 669, n. 5 (1974) (stating that these protections extend to the Commonwealth of Puerto Rico).[4] The Fourteenth Amendment due process guarantee has both procedural and substantive aspects. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). In this case, even though Reyes-Orta's complaint fails to explicitly state so, her allegations appear to claim due process procedural violations; thus, the following discussion is limited to that aspect of due process.[5]

"[T]o establish a procedural due process claim under § 1983, a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. Puerto Rico Ports

---

[4] The Calero-Toledo Court relied on Mora v. Mejias, 206 F.2d 377, 382 (1st Cir. 1953), which underscored Puerto Rico's Commonwealth status and held that the Fourteenth Amendment applies here with the same force and effect than in the States of the Union.

[5] In any event, Reyes-Orta's complaint contains no allegations that could sustain a substantive due process claim. A "claim is cognizable as a violation of substantive due process only when it is so extreme and egregious as to shock the contemporary conscience. " McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir. 2006); see also Albright v. Oliver, 510 U.S. 266, 272 (1994) ("Substantive due process claims generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues."); Bibiloni Del Valle v. Puerto Rico, 661 F.Supp.2d 155, 185 (D.P.R. 2009) ("The very nature of this constitutional protection has caused that substantive due process protection be used sparingly.").

Authority, 515 F.3d 20, 29 (1st Cir. 2008). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Rosado De Velez v. Zayas, 328 F. Supp. 2d 202, 211 (D.P.R. 2004) (citing Bd. of Regents of States Colleges v. Roth, 408 U.S. 564, 577 (1972)).

Under Puerto Rico law, employees have no property interest over the functions they perform. Torres-Martinez v. P.R. Dep't of Corrections, 485 F.3d 19, 24-25 (1st Cir. 2007) (citing C.E.S. U.P.R. v. Gobernador, 137 P.R. Dec. 83, 110 (1994)). Nevertheless, employees classified as "career" or "permanent" have vested property rights over their positions, and cannot be deprived of these rights without due process of law. Febus-Rodriguez, 660 F.Supp.2d at 178. "At a minimum, career employees are entitled to notice and a meaningful opportunity to respond prior to termination." Id.; see also Monfort-Rodriguez, 599 F. Supp. 2d at 168. Put differently, before termination, due process requires that "[t]he tenured public employee [receives] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Reyes-Orta's due process claim is two pronged. First, she claims a due process violation for the alleged stripping of functions she was subjected to. Second, she claims that her termination ran afoul of her due process rights. Plaintiffs, however, fail to address the case law cited above about the lack of proprietary interests over job functions. Neither do Plaintiffs explain why or how the pretermination proceedings afforded to Reyes-Orta abridged her due process rights. On the contrary, Plaintiffs' complaint alleges that she received written notice of the charges against her and was afforded with an opportunity to defend her position, which generally preclude a procedural due process claim. See Cleveland Bd. of Educ., 470 U.S. at 546. Co-defendants underscore these facts on their motion to dismiss, but Plaintiffs ignored them on their opposition. More important yet, Plaintiffs' complaint nowhere impugns the pre-termination proceedings afforded to Reyes-Orta.

Therefore, Co-defendants' motion to dismiss Reyes-Orta's due process claims is **GRANTED**.

*II. The Statute of Limitations Challenge*

Co-defendants also challenge Plaintiffs' constitutional claims with a statute of limitations argument. Specifically, they contend that Reyes-Orta's § 1983 claims are time barred because "the letter dated December 9, 2009—notifying Reyes-[Orta] that as a result of an audit her career appointment was to be declared null—gave her actual knowledge of the injury she is now claiming." Docket # 21, p 7. Co-defendants' argument is well off the mark.

Section 1983 carries a one-year statute of limitations in Puerto Rico. Moran-Vega v. Cruz-Burgos, 537 F.3d 14, 20 (1st Cir. 2008). This one-year period begins to run when the plaintiff knows or has reason to know about the injury at play. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994). In wrongful discharge cases, a plaintiff has the requisite knowledge when he "learns of the decision to terminate his employment." Rivera Muriente v. Agosto-Alicea, 959 F.2d 349, 352-54 (1st Cir. 1992). "[A]ll that is necessary in order to trigger the limitation period is that the employer must unambiguously indicate that a *final termination decision has been reached*." Id. (quoting Leite v. Kennecott Copper Corp., 558 F.Supp 1170, 1174 (D. Mass. 1983)) (emphasis added).

In this case, the requisite unambiguous, final termination notice came on May 5, 2010, when Reyes-Orta received the termination letter. The December 2009 letter that Co-defendants rely upon merely notified Reyes-Orta about the intentions of Hernandez-Gregorat in connection with her appointment. In fact, after the 2009 letter, Reyes-Orta was allowed to contest Hernandez-Gregorat's nullity contentions. Thus, Plaintiffs are correct in arguing that May 5, 2010, not December 2009, started the one-year statutory clock for Reyes-Orta's § 1983 claims. Filed on May 2, 2011, Reyes-Orta's complaint beat the one-year mark by 3

days.[6] Therefore, Co-defendants' motion on this front is also **DENIED**.

> *III. Claims under Puerto Rico's General Tort Statute*

Co-defendants last challenge Reyes-Orta's claims under Articles 1802 and 1803 of Puerto Rico's Civil Code. In so doing they rely on <u>Santini-Rivera v. Serv. Air, Inc.</u>, 137 P.R. Dec. 1 (1994); <u>Medina v. Adecco</u>, 561 F.Supp.2d 162, 175-76 (D.P.R. 2008); <u>Barreto v. ITT World Directories, Inc.</u>, 62 F. Supp. 2d 387, 393 (D.P.R. 1999), which set forth the general rule that, "in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under [Article 1802]." <u>Medina</u>, 561 F.Supp.2d at 176. Plaintiffs' opposition memorandum provides no authority or argument allowing deviation from this general rule, even though that P.R. Laws Ann. tit. 29, § 146 et seq. specifically proscribes the conduct giving rise to Reyes-Orta's tort claims against Co-defendants. The motion to dismiss Reyes-Orta's Articles 1802 and 1803 claims against Co-defendants is therefore **GRANTED**.

**Conclusion**

For the reasons set forth above, Reyes-Orta's Fourteenth Amendment claims, as well as her tort claims against Co-defendants, are **DISMISSED with prejudice**. Co-defendants' motion to dismiss Plaintiffs' other claims is **DENIED**.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 14th day of February, 2012.

s/ Salvador E. Casellas
SALVADOR E. CASELLAS
U.S. Senior Disrict Judge

---

[6] Co-defendants also raise a statute of limitations challenge as to the § 1983 claims against Gomila-Santiago and Maldonado-Vazquez. Docket # 21, pgs. 7-8. The Court's determination on Reyes-Orta's conspiracy claims suffices to discard these contentions.