## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SHEILA REYES-ORTA, ET AL.,

     Plaintiffs,

     v.

HIGHWAY AND TRANSPORTATION
AUTHORITY, ET AL.,

     Defendants.

**Civil No. 11-1410 (SEC)**

## OPINION AND ORDER

Before the Court are the defendants' motion for summary judgment (Docket # 74), the plaintiffs' opposition thereto (Docket # 87), the defendants' reply (Docket # 97), and the plaintiffs' surreply (Docket # 104).[1]  After reviewing the filings and the applicable law, the defendants' motion for summary judgment is **GRANTED**.

### Factual and Procedural Background

Sheila Reyes-Orta, her husband, and their conjugal partnership (collectively, Plaintiffs) filed this § 1983 political discrimination suit pursuant to the U.S. Constitution as well as under the laws of the Commonwealth of Puerto Rico. Docket # 1. The defendants are the Puerto Rico Highway and Transportation Authority (Authority); Rubén Hernández-

---

[1] Since the plaintiffs provided the defendants with a copy of the transcripts of Luis Sánchez-Casanova's deposition after the filing of the defendants' summary judgment and pursuant to a Court order, <u>see</u> Docket # 117, the defendants later filed a motion supplementing their motion for summary judgment. <u>See</u> Dockets # 133-134. The supplementary motion, together with the supplemental statement of uncontested facts and its respective oppositions, were also reviewed and considered in this opinion. <u>See</u> Dockets # 133, 134, 146 & 147.

Gregorat, Puerto Rico's former Secretary of Transportation and the Executive Director of the Authority; Brenda Gomila-Santiago, Director of Human Resources; and Cesar Maldonado-Vázquez, Labor Relations Specialist (collectively, Defendants). Id. The individual defendants are sued in their official and personal capacities.[2] Plaintiffs allege that Reyes-Orta was fired from her career post because of her political affiliation with the Popular Democratic Party (PDP). Docket # 1. She seeks monetary compensation for her alleged grievances as well as equitable relief in the form of full reinstatement at the Authority. Id.

At the motion-to-dismiss stage, the Court dismissed with prejudice Plaintiffs' Fourteenth Amendment claims, as well as the tort claims against them. See Reyes-Orta v. Highway and Transporation Authority, 843 F.Supp. 2d 216 (D.P.R. 2012). Therefore, the only surviving federal law claim is Plaintiffs' claims under the First Amendment.

Defendants now move for summary judgment arguing that (1) Plaintiffs established neither a prima facie case of political discrimination under § 1983 nor a conspiracy claim against Defendants; (2) the claims against Maldonado-Vázquez are time-barred; and (3) they are entitled to the Mt. Healthy defense. The relevant uncontested facts, in the light most favorable to Plaintiffs, follow.

Reyes-Orta has been a public sector employee in the Government of Puerto Rico for almost three decades. She alleges to be an open and active member of the PDP, having participated in PDP meetings and elections campaigns. Docket # 1. She has never occupied

---

[2] Defendants do not argue that the claims against the Authority and the claims for monetary relief against them in their official capacities are barred by the Eleventh Amendment. But given the court's ultimate disposition of Plaintiffs' claims, this issue is of no consequence.

a trust position with the Authority and has never talked about politics with either Hernández-Gregorat or Gomila-Santiago. Statement of Uncontested Facts (SUF) Docket # 73, ¶¶ 18-20.

Hernández-Gregorat, a member of the New Progressive Party (NPP), became the Authority's Executive Director after the 2008 general elections. Docket # 87, p. 5; Docket # 88-3, ¶ 3. Luis Sánchez-Casanova was thereafter appointed Human Resources Director, but he resigned approximately six months later. Docket # 73-1, p. 155-158. Gomila-Santiago substituted Sánchez-Casanova. Id.

*The audit and Reyes-Orta's termination*

In 2001, Reyes-Orta was transferred from the Industrial Commission to the Authority as "Human Resources Program Chief." Under previous PDP administrations, Reyes-Orta's appointment was the subject of two investigations. SUF ¶ 106.

First, on November 6, 2002, the Internal Audit Office of the Industrial Commission issued a report with the results of an investigation regarding the "certification of duties" submitted by Reyes-Orta for the job position of Human Resources Program Chief. SUF ¶ 80; see also Docket # 97-9. According to the report, (1) the certification provided to the Office of Human Resources was incorrect because the essential duty of supervising clerical and secretarial personnel was not part of the duties of Reyes-Orta's previous position at the Industrial Commission; and (2) Guillermo A. Rivera-Bermúdez (Rivera-Bermúdez), Program Officer of Human Resources at the Industrial Commission, admitted that even though he had signed the certification of duties, it was prepared by Reyes-Orta. SUF ¶ 84; Docket # 77-14, p. 5-7. The report further stated that "these deceitful and wrong actions are

indicative of fraud, the facts and circumstances point toward the possibility that false information was submitted with the intention of making Ms. Sheila Reyes-Orta qualify and obtain a position in the Highway Authority." Id.

Based on the findings of the report, the Internal Audit Office concluded that the certification of duties was issued without due authorization or review by the Director of the Office of Human Resources (Anamari Melecio-Rivero); that Rivera-Bermúdez prepared the Certification of Duties without verifying that it contained true and accurate information; and that an erroneous or fraudulent certification was issued for the use of another agency. Docket # 77-14, p. 8. Under Administrative Order No. 03-85/Rules of Conduct and Procedure Regarding Corrective and Disciplinary Measures, these actions entailed permanent separation from service. Id. at 7. Thus, the report recommended referring the investigation "to the Legal Division in order to broaden the same or determine the application of the corresponding corrective measures and sanctions." SUF ¶ 87; Docket # 77-14.

Thereafter, on May 14, 2004, the Authority's Internal Auditor prepared a memorandum regarding a "Special Audit" conducted to investigate Reyes-Orta's submission of the allegedly erroneous or fraudulent certification of duties to the Authority. SUF ¶ 90; Docket # 77-15; see also Opposition to Statement of Unconstested Facts (OSUF) Docket # 88, ¶ 94. The investigation was requested because Reyes-Orta was being considered for a "merit-based pay raise," and the Human Resources Office uncovered that the Internal Audit Office was investigating her. Docket # 77-15, p. 1. According to the memorandum, the Authority's investigation "confirmed that the Industrial Commission

performed an audit in which it determined that the certification that Ms. Reyes-Orta presented to the Highway and Transportation Authority was erroneous or fraudulent[, but it could] not . . . be determined whether said certification was a determining factor in concluding that the candidate met all the requirements at the time of recruitment." SUF ¶ 92; Docket # 97-10, p. 4. The memorandum recommended further analysis and to order the corresponding corrective actions. Id. The record shows no further action with regard to Reyes-Orta on behalf of the PDP administrations.

Then, on December 9, 2009, Hernández-Gregorat notified Reyes-Orta of his "intention" to declare her appointment null. SUF ¶ 69; see also Docket # 77-11. According to the letter of intent, the Authority "is currently performing and has performed multiple audits regarding the personnel transactions carried out." Docket # 77-11. It further stated that the audit revealed the following: (1) Reyes-Orta's qualification for the position of Human Resources Program Chief was preceded by the presentation of a certification of duties from the Personnel Office of the Industrial Commission which was not authorized or certified as true by the then Director of the Personnel Office of the Industrial Commission; (2) the Certification of Duties presented by Reyes-Orta contained false or fraudulent information regarding her supervisory experience and that she did not qualify for the position; and (3) her transfer from the Industrial Commission to the Authority was processed as a "transfer-promotion" in contravention of the merit principle, the Authority's laws and regulations, and the principle of free competition. Id.; see also SUF ¶ 70-74.

Approximately a month later, Hernández-Gregorat issued Resolution No. 2010-01, which declared null various resolutions (Resolutions 2000-15, 2001-13, and 2001-24) that

had allowed certain personnel transactions that were otherwise prohibited by the Authority's laws and regulations. SUF ¶ 66; see also Docket # 77-10.[3] It also authorized the Authority to take the appropriate measures to review, correct or nullify those personnel transactions. Id.; see also SUF ¶ 67. The Authority thus conducted an audit of the personnel files of all of its employees. SUF ¶ 68. An informal hearing was held on March 17, 2010, Dockets # 77-19 & 77-18, and the examining officer upheld Hernández-Gregorat's decision to terminate Reyes-Orta. Id. On May 3, 2010, Reyes-Orta was terminated. Docket # 77-19.

*The leak of information to "El Nuevo Día" newspaper*

On April 29, 2009, "El Nuevo Día" published an article divulging the salaries of certain trust employees at the Authority. SUF ¶ 50. The article stated that its source was a "change report" generated by the Authority's Human Resources Office. Id. Hernández-Gregorat ordered an investigation to identify the source of the leak, but never targeted any particular employee. SUF ¶ 52. In accordance with the Authority's Regulation for Disciplinary Measures, Sánchez-Casanova initiated an internal and preliminary investigation on this matter. See Docket # 133, Defendants' Supplemental Statements of Uncontroverted Material Facts (SSUF) ¶¶ 124-5; Docket # 133-2, p. 47. Sánchez-Casanova then rendered his report to the Industrial Relations Office of the Authority, which is the office in charge of conducting official investigations and making recommendations to the

---

[3] The Court must first point out that neither party submitted as evidence Resolutions 2000-15, 2001-13, and 2001-24. However, according to Resolution 2010-01, Resolutions No. 2001-13 and 2001-24 "convert into a transfer, promotion, or demotion all transfers and recruitment of personnel that render services in agencies comprised within the Personnel System instated by the then Personnel Act, Law 5 of October 14, 1975 as amended, rulings which by way of their own provisions require the Authority's Personnel Regulations to be amended to adjust them to said determination." Docket # 77-10.

Secretary on disciplinary matters. Docket # 133-2, p. 47. He never concluded that Reyes-Orta was the person responsible for the leak of information. Docket # 77-8.[4]

While the investigation regarding the leak of information continued, in April 2009 "the guys from Information [Technology] went into Human Resources to check on the computers of everybody there, and from that point on, [Reyes-Orta's computer] stopped working." Docket # 73-1, p. 152. She verbally reported the problem to Sánchez-Casanova when he was the Human Resources Director, and later to Brenda Gomila, but nothing was done. Plaintiffs Additional Statement of Uncontested Facts (ASUF), Docket # 88, ¶ 27. Reyes-Orta continued performing her functions with the help of her secretary, who had a computer in good condition. Docket # 73-1, p. 162-6.

Plaintiffs also posit that while the foregoing actions were taking place, Reyes-Orta was stripped of some of her supervisory functions like, for example, control of attendance of employees under her supervision, the taking of decisions pertaining to personnel under her supervision without her consent, and others. See SUF ¶ 23; OSUF ¶ 23, Docket # 73-3, ¶ 5.

**Standard of Review**

The Court may grant a motion for summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[4] After Sánchez Casanova's report, on August 31, 2009, Reyes-Orta "was summoned for an interview . . . at the Industrial Relations Office … conducted by Mr. César Maldonado-Vázquez, Specialist in Industrial Relations" at the Industrial Relations Office. Docket # 77-1; Docket # 133-2, p. 62, 67 & 82. Reyes-Orta attended the interview.

In a letter dated September 2, 2009, Reyes-Orta quoted Maldonado-Vázquez's comments towards her during the interview. SUF ¶ 5. According to the letter, Maldonado-Vázquez told her "that he knew as to my political affiliation, (openly indicating that I am an active member of the Popular Democractic Party);" and "that your gang kicked me out, (referring to the past [PDP] Administration)". Docket # 77-1.

matter of law." Fed. R. Civ. P. 56(a); <u>Kelley v. Correctional Medical Services, Inc.</u>, 707 F.3d 108, 155 (1st Cir. 2013). At this stage, it is axiomatic that courts "may not weigh the evidence," <u>Casas Office Machs., Inc. v. Mita Copystar Am., Inc.</u>, 42 F.3d 668 (1st Cir. 1994), but must construe the record in the "light most flattering" to the nonmovant. <u>Soto-Padro v. Public Bldgs. Authority</u>, 675 F.3d 1 (1st Cir. 2012). Courts must similarly resolve all reasonable inferences in favor of the party opposing summary judgment. <u>Id.</u>

Because the summary judgment inquiry is grounded in the factual evidence available, one of its principal purposes "is to isolate and dispose of factually unsupported claims or defenses." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The Court may therefore consider "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(A). Inadmissible evidence, such as hearsay evidence considered for the truth of the matter asserted, is excluded at this stage. <u>Hannon v. Beard</u>, 645 F.3d 45, 49 (1st Cir. 2011).

Once the party moving for summary judgment has established an absence of material facts in dispute <u>and</u> that judgment is proper as a matter of law, the burden shifts to the nonmovant to "affirmatively point to specific facts that demonstrate the existence of an authentic dispute." <u>Kenney v. Floyd</u>, 700 F.3d 604, 608 (1st Cir. 2012) (internal quotation marks omitted). A dispute is genuine if a reasonable factfinder "could resolve the point in favor of the non-moving party." <u>Johnson v. Univ. of P.R.</u>, 714 F.3d 48, 52 (1st Cir. 2013) (internal quotation marks omitted). A material fact, in turn, is one that may affect the outcome of the suit under the governing law. <u>Maymí v. P.R. Ports Auth.</u>, 515 F.3d 20, 25

(1st Cir. 2008). The nonmovant may not rest on conclusory allegations and improbable inferences. Shafmaster v. U.S., 707 F.3d 130, 135 (1st Cir. 2013); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. So the nonmovant must "point to 'competent evidence' and 'specific facts' to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). Failure to shoulder this burden, "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

**Applicable Law and Analysis**

*First Amendment Political Discrimination Claim*

It goes without saying that political discrimination is proscribed by the First Amendment of the United States Constitution.  Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973).  As the First Circuit has remarked: "'The right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment.'" García-González v. Puig-Morales, 761 F.3d 81 (1st Cir. 2014) (quoting Carrasquillo v. P.R. ex rel. Justice Dep't, 494 F.3d 1, 4 (1st Cir. 2007)). "[T]he First Amendment protects associational rights … [and] the right to be free from discrimination on account of one's political opinions or beliefs."  Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004). Accordingly, "a government employer cannot discharge public employees merely

because they are not sponsored by or affiliated with a particular political party." Id. This

protection extends to career employees, transitory employees, and independent contractors.

Martínez-Baez v. Rey-Hernández, 394 F.Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-

Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)).

        In order to bring a successful political discrimination claim, a plaintiff must establish

the following four elements: (1) that the plaintiff and the defendant belong to opposing

political affiliations; (2) that the defendant has knowledge of the plaintiff's political

affiliation; (3) that there is an adverse employment action; and (4) that political affiliation

was a substantial or motivating factor for the adverse employment action. Ocasio-Hernández

v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011). The plaintiff bears the initial burden of

producing sufficient direct or circumstantial evidence from which a jury reasonably may

infer that plaintiffs' constitutionally protected conduct -political affiliation with the PPD-

was a substantial or motivating factor behind the adverse employment action. Acevedo-Díaz

v. Aponte, 1 F.3d  62, 66 (1st Cir. 1993).

        It is firmly established that the First Amendment's protection against political

discrimination also extends to "[a]ctions short of dismissal or demotion, including denials of

promotions, transfers, and failures to recall after layoff." Rodríguez-García v. Miranda-

Marín, 610 F.3d 756, 766 (1st Cir. 2010). "Employment actions are sufficiently adverse to

support a First Amendment § 1983 claim 'if those actions, objectively evaluated, would

place substantial pressure on even one of thick skin to conform to the prevailing political

view.'" Id. It "includes changes in employment, which, although not as extreme as

dismissal, result in working conditions 'unreasonably inferior' to the norm for the position

at issue. <u>Carrasquillo</u>, 494 F.3d at 4; <u>see also</u> <u>Rodríguez-García</u>, 610 F.3d at 766; <u>Agosto-de-Feliciano v. Aponte-Roque</u>, 889 F.2d 1209, 1218 (explaining that the factfinder must "canvass the specific ways in which the plaintiff's job has changed" and "determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her rank and title").

    *A.  The leak of information*

Defendants argue that Plaintiffs' political discrimination claim arising out of the "El Nuevo Día leak" investigation is meritless because they failed to establish an adverse employment action resulting from that investigation. Defendants specifically argue that Reyes-Orta was never the target of the investigation, and that she was never subjected to disciplinary action. The Court agrees.

To begin, Hernández-Gregorat never pointed to a specific employee as the person responsible for the leak. SUF ¶ 52. According to Sánchez-Casanova's deposition, Hernández-Gregorat stated only that "the information had come out of [the Human Resources Office], and that I needed to implement disciplinary measures." Docket # 133-2, p. 39-40. It is also uncontested that the newspaper article indicated that its source of information was a "change report" generated by the Human Resources Office of the Authority. SUF ¶ 50. Thus, there is no evidence on record showing that Reyes-Orta was the sole target of the investigation, or that she was investigated on account of her political beliefs.

Moreover, Sánchez-Casanova rendered a report but never concluded that she was the person responsible for the leak of information. Docket # 77-8. No disciplinary measures

were taken against Reyes-Orta and, on October 7, 2011, the Director of the Human Resources Office certified that the "El Nuevo Día" investigation was "dismissed, without any result." <u>Id.</u>; Docket # 73-15.[5]

### B. *The alleged intervention with the computer*

In their complaint, Plaintiffs stated that Gomila-Santiago removed Reyes-Orta' access to the human resources database, "impeding [her] performance of the duties and responsibilities pertaining to her career position." Docket # 1, ¶ 31. In her deposition, however, Reyes-Orta clarified that she was not denied access to the database, but that in April 2009 "the guys from Information [Technology] came to check on the computers, and from the next day, after that, then mine didn't work anymore [and] I reported it on several occasions, but nothing happened." Docket # 73-1, p. 152. Reyes-Orta thus argues that "[n]ot having a computer meant not having access to the [Human Resources] Sense System and depending on other employees for her work to be performed." Docket # 87, p. 9; ASUF ¶ 27.

It is uncontested that Reyes-Orta continued performing her functions, although with the help of her secretary who had a computer in good condition. Docket # 73-1, p. 162, 164, 166. There is no evidence that her computer was intentionally damaged or that, if

---

[5] Contrary to Plaintiffs' assertions, the summary-judgment record shows that Sánchez Casanova's investigation was just a preliminary probe which, in accordance with Regulation No. 02-004 ("Standards of Conduct and Disciplinary Measures"), was later referred to the Industrial Relations Office. <u>See</u> Docket # 97, Defendants' Reply to OSUF (Reply to OSUF) ¶ 58; Docket # 97-5, p. 6; Docket # 133-2, p. 47; and SUF ¶ 128-9. There is no evidence on record that the Authority conducted a second investigation after Reyes-Orta was exonerated.

intentionally damaged, it was due to Defendants' orders. Nor is there evidence that Reyes-Orta needed access to the Sense System to perform her work. See id. at 165-9.[6]

More importantly, in April 2009, Gomila-Santiago was not even the Human Resources Director; it was Sánchez-Casanova, who is not a defendant in this case. Docket # 73-1, p. 155. Gomila-Santiago became director approximately six or seven months later. Id. at 158. It was after a few months of Gomila-Santiago becoming the director that Reyes-Orta brought to her attention that she was having problems with her computer, because she was already used to doing her work by hand and giving it to her secretary. Id. at 164-5. Reyes-Orta admitted that she never followed the correct procedure to request a new computer; specifically, Reyes-Orta acknowledges that such a request had to be done in writing, and not verbally as she did. Id. at 161. Accordingly, this action is not "sufficiently adverse to support a First Amendment § 1983 claim." Rodríguez-García, 610 F.3d at 766. And even if it were, Plaintiffs do not connect any of the defendants with the alleged intervention with her computer.

   *C. Alleged stripping of functions:*

As said, Plaintiffs aver that Reyes-Orta's responsibilities were diminished in several ways. Plaintiffs say that the following functions were stripped from Reyes-Orta: (1) control of attendance of the employees under her supervision; (2) supervision of employees; (3) the taking of decisions pertaining to personnel under her supervision without her consent, approval, and/or notification; and (4) the personnel files with which she worked daily were taken away from her office, and moved to Gomila's office. See SUF ¶ 23; OSUF ¶ 23,

---

[6] Reyes-Orta stated only that she would need the assistance of her secretary because "I (Reyes-Orta) would do the work by hand, and then I would give [it] to her." Id. at 164.

Docket # 73-3, ¶ 5. Plaintiffs' only evidence in support of these assertions are three letters dated February 25, 2010, September 30, 2009, and August 21, 2010. SUF ¶ 23; Docket # 73-3, ¶ 7, and Reyes-Orta's unsworn statement.[7]

     i.     *February 25, 2010 letter*

In the letter dated February 25, 2010, Reyes-Orta stated that the cabinet files, along with the job position files, were going to be moved outside of her office without her consent, and despite the fact that she was acting as custodian of the documents. SUF ¶ 24; Docket # 73-1, p. 104. Although this situation could make her work more difficult, see id., under Article 20(3)(a) and (g) of the Personnel Regulations of the Authority, the custodian of the employee's records was the Director of the Human Resources Office.[8] Article 20 further provides that the Director "may delegate subordinates to be the official representatives for purposes of examining the record." See SUF ¶ 27-28; Docket # 77-3, p 6-7. Accordingly, Gomila-Santiago sent a memorandum to all personnel regarding the use and control of personnel files, which clarified that she was the custodian of the files. SUF ¶ 29. And although Reyes-Orta stated in her unsworn statement that the job position records are "separate and distinct" from the personnel records of the individual employees, Docket #

---

[7] Reyes-Orta's unsworn statement under penalty of perjury was signed after the filing of Defedants' motion for summary judgment. Therefore, the Court will disregard paragraphs 15-17, 19-22, and 27-28 as contradictory to her deposition testimony. See Order at Docket # 162; see also Orta-Castro v. Merck, Sharp Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006); Hernández-Loring v. Universidad Metropolitana, 233 F.3d 49, 54 (1st Cir. 2000); Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994) (stating that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

[8] There is no evidence in the record to prove that an actual problem arose as a result of this action.

88-1, ¶ 24, Plaintiffs do not properly controvert Defendants' contention that Gomila-Santiago was the legal custodian of all files. See Docket # 73-1, p. 109-10.[9]

### ii. August 21, 2009 letter

In the August 21, 2009 letter, addressed to Gomila-Santiago, Reyes-Orta complained of an alleged order given by Lillian Carrasco, Special Aide to the Secretary, instructing that all changes in the payroll had to be reviewed by her. SUF ¶ 31; see Docket # 77-5. Reyes-Orta argues that this requirement would delay the proceedings. Id. But evidence of the implementation of this new procedure is insufficient to show that Reyes-Orta lost her supervisory role or that her work situation became "unreasonably inferior."   The new procedure required only an additional screening of all changes on the payroll of the personnel of the Authority. Defendants reply to OSUF ¶ 31; Docket # 73-1, p. 121.[10]

### iii. September 30, 2009 letter

Finally, in the September 30, 2009 letter also addressed to Gomila-Santiago, Reyes-Orta alleged that by performing an external audit of the Authority's personnel files, her duties were being taken away because she supervised "Human Resources Specialists trained to assess, analyze and submit technical recommendations on personnel actions." SUF ¶ 33; Docket # 77-6; Docket # 97-1, p. 116-133.

---

[9] According to Reyes-Orta's affidavit, since her appointment as Human Resources Program Chief in charge of the Job Analysis, "I was in charge of the job positions records (*expedientes de puestos*)." Docket # 88-1, ¶ 23. "The job positions records contain information related to each position open at the [Authority] and the development of such position and all analysis and investigations performed related to each position." Id. ¶ 24.

[10] Plaintiffs have not shown how this is inconsistent with any applicable law or regulation, and there is no evidence on record as to any problems or any deadlines that were in fact missed due to this process. Docket # 73-9. This document also fails to demonstrate that Reyes-Orta was improperly stripped of her functions.

The Court disagrees with this contention. Plaintiffs have pointed to no evidence in support of their contention that the Authority could not request an external audit of the personnel files, and that requesting such an audit amounted to stripping Reyes-Orta's functions. Moreover, Sánchez-Casanova explained in his deposition that, while he served as Director of the Human Resources Office, he had contemplated conducting an external audit of the personnel files due to lack of resources. Docket # 133-2, p. 69, 72-73.

Besides these three letters, Plaintiffs point to no instance in the record to support their allegations with specific facts; their assertions are mere conclusory allegations without specific supporting facts. But at the summary-judgment stage, the nonmovant must "point to 'competent evidence' and 'specific facts' to stave off summary judgment." Tropigas de P.R., Inc., 637 F.3d at 56. The Court shall "afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Id. The Court finds that these situations, even taken together, are not sufficient to allow a reasonable jury to conclude that Reyes-Orta has suffered an adverse employment action.

### D. The Mt. Healthy Defense

The Court now turns to the claim regarding the audit of the personnel files and Reyes-Orta's termination. As said, Defendants raise the Mt. Healthy defense. They argue that due to the multiple irregularities identified during the audit of Reyes-Orta's personnel files, the decision to declare her appointment null would have been made regardless of her political affiliation.  Docket # 74, p. 22. The Court thus assumes, without deciding, that

Plaintiffs have set forth an adequate prima facie case, and proceeds to analyze Defendants'

Mt. Healthy defense.

"In Mt. Healthy City School District Board of Education v. Doyle, the Court

established a two-part burden-shifting analysis for evaluating free speech claims, which has

also been applied in the political discrimination context." Padilla-García, 212 F.3d at 74.

Under this analysis, the plaintiff must first show that he engaged in constitutionally

protected conduct, and that this conduct was a substantial or motivating factor for the

adverse employment decision. Id.  If the plaintiff does so, then the burden shifts to the

defendant to show, by a preponderance of the evidence, that (1) they would have taken such

action for reasons that are not unconstitutional; and (2) they would have taken the same

action in any event. Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir. 2006);

Acevedo-Díaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993). Thus, the Mt. Healthy defense "is

rooted in causation; even after plaintiff makes a prima facie case, it is 'insufficient to

establish discrimination as a matter of law because the plaintiff's case at that point does not

'distinguish[] between a result caused by a constitutional violation and one not so caused.''"

Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49 (1st Cir. 2014) (citing Sánchez-López v.

Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir. 2004)). The Mt. Healthy defense has been

described by the Supreme Court in the following way: "it deals with employment actions

driven by 'mixed motives,' and provides that where there are both 'lawful' and 'unlawful'

reasons for the adverse employment action, 'if the lawful reason alone would have sufficed

to justify the [action], 'then the employee cannot prevail." Soto-Padró v. Public Buildings

Authority, 675 F.3d 1, 6 (1st Cir. 2012) (citing McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995)).

Defendants maintain that they would have reached the same decision to terminate Reyes-Orta absent any political discrimination because, as stated in her letter of intent of dismissal: (1) the "Certification of Duties" was not certified by the Director of Human Resources, Dockets # 77-11 & 97-9 (emphasis omitted); (2) the Certification of Duties contained false or fraudulent information regarding Reyes-Orta' supervisory experience, and she did not meet the minimum requirements for the position of Human Resources Chief, which required seven years experience in human resources administration, and two in supervisory positions. Docket # 77-11; and (3) her transfer from the Industrial Commission to the Authority was processed as a "transfer-promotion" in contravention to the merit principle, the Authority's laws and regulations, and the principle of free competition. Id.; see also SUF ¶ 70-74.

Despite Reyes-Orta's self-serving assertions about having the required experience, which were produced in a conclusory fashion given the strong evidence against it, the other reasons provided in the letter of intent suffice to justify Reyes-Orta's termination. See Dockets # 88-1, 97-9; 77-15; and 77-11. According to this letter, since Reyes-Orta came from the Industrial Commission, and the Authority is a public corporation for which all appointments, promotions and transfers, among others, must be made as provided in the Authority's rules and regulations, her recruitment should have been done pursuant to: (1) the publication of a job opening; and (2) the establishment of a register of eligibles. SUF ¶ 74;

P.R. Laws Ann. tit. 9 § 2007; Personnel Regulation 02-005 (Regulation 5523).[11] This process was not followed.

Reyes-Orta's transfer from the Industrial Commission to the Authority, however, was processed as a "transfer-promotion without opposition." According to Personnel Regulation 02-005 (Regulation 5523), a transfer is allowed only under specific circumstances, none of which was present in this case. Moreover, a promotion without opposition may only be granted "when exception and special service needs and special qualifications of the employees so justify." Docket # 77-17, p. 2. The record does not contain information with regard to any of the circumstances that may have justified the "promotion without opposition," and Plaintiffs fail to present legal arguments against this proffered reason.[12]

Finally, regarding the "Certification of Duties," it appears from the record that Rivera-Bermúdez merely signed a draft prepared by Reyes-Orta without verifying that it contained true and accurate information. Docket # 77-14. Plaintiffs do not properly

---

[11] The Industrial Commission was subject to the regulations of the Puerto Rico Public Service Personnel Act, Law No. 5 of October 14, 1975 (Repealed by Law No. 184 of August 3, 2004). Although the Authority was excluded from the scope of Act No. 5, see P.R. Laws Ann. Tit. 3, § 1338, it has to adopt, with the advise of the Personnel Office, personnel regulations embodying the merit principle. See Autoridad de Puertos v. Municipio de San Juan, 23 P.R. Offic. Trans. 437 (1989); see also Unión de Empleados Carreteras v. JRT, 119 D.P.R. 116, 129 (1987), 19 P.R. Offic. Trans. 138 (concurrent opinion) (stating that the Authority is a government instrumentality that operates as a private enterprise or business).

[12] Reyes-Orta's termination is consistent with Resolution 2010-01. Resolution 2010-01 annulled Resolution No. 2001-13, which had converted "into a transfer, promotion, or demotion all transfers and recruitment of personnel that render services in agencies comprised within the Personnel System instated by the then Personnel Act, Law 5 of October 14, 1975 as amended, ruling which by way of their own provisions require the Authority's Personnel Regulations to be amended to adjust them to said determination." Docket # 77-10. It further stated that "[c]urrent laws does not allow the Authority's Personnel Regulations to be amended by way of Resolution, wherefore Resolution 2001-13 of April 25, 2001 … are found to be in express contradiction of the rule of law established by the Honorable Supreme Court of Puerto Rico … in Puerto Rico Port Authority v. Municipality of San Juan, 123 D.P.R. 496."

controvert this contention. Therefore, Reyes-Orta's appointment violated the Authority's rules and regulations.

But "simply showing that an appointment was illegal under local law does not suffice to meet defendants' Mt. Healthy burden." Reyes-Pérez, 755 F.3d 49, 54 (1st Cir. 2005). The "second prong of a successful Mt. Healthy defense requires an additional showing- that defendants 'would have reached the same decision' as to her termination even 'in the absence of the protected conduct.'" Vélez-Rivera, 437 F.3d 145, 153 (1st Cir. 2006) (quoting Mt. Healthy, 429 U.S. at 287). That is, the second prong of Mt. Healthy is satisfied '[i]f defendants demonstrated that they in fact have a practice of taking corrective action against all employees [whose appointments violate Puerto Rico law] or could otherwise show that they would have taken the corrective action anyway. Id. (quoting Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 131(1st Cir. 2004)). Here, as shown below, Defendants meet their burden of producing enough evidence to establish that Reyes-Orta's dismissal would have occurred in any event for nondiscriminatory reasons.

The record shows that the Authority conducted an audit of the personnel files of all its employees. SUF ¶ 68. Since Sánchez-Casanova's appointment as Human Resources Director, the Authority had been contemplating conducting an audit of the personnel files, because there were "doubts" about certain personnel transactions, like some reinstatements and transfers from agencies of the central government. Docket # 133-2, pp. 72-74. Similar doubts had been raised years earlier by Authority officials of Reyes-Orta's own political party. In any event, Resolution 2010-01 clearly stated that the Authority would take the necessary legal measures to revise, correct or nullify all personnel transactions authorized

by previous resolutions based on incorrect interpretations of the applicable laws and regulations. Thus, it is clear that the Authority would have taken the same corrective actions against all employees whose appointments were made pursuant to the flawed resolutions. Resolution 2010-01 was clearly aimed at correcting illegal personnel transactions, regardless of the identity of the persons who held the positions at issue or their political persuasion.

Plaintiffs do not properly controvert that the personnel files of all the Authority's employees were audited. That other PDP employees were dismissed as a result of the audit is not sufficient evidence. Docket # 88-1, ¶ 14.[13] As stated above, Reyes-Orta's appointment violated the Authority's laws and regulations, and its legality had been questioned in at least two prior occasions, under PDP-controlled administrations. The First Circuit has stated that:

> [i]f uniformly applied personnel practices, predicated on legitimate reasons, result in terminations, those terminations are not unconstitutional because those affiliated with one political party are disproportionately impacted. It is in the nature of a change in administrations that job actions by the new party in power will have a disparate impact on members of the outgoing party. Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 154 (1st Cir. 2006).

Plaintiffs argue, however, that Defendants "selectively audited [Reyes-Orta's] personnel file to find somehow a theory to pursue her termination of employment." Docket # 1, p. 11. Their argument is based on the fact that Resolution 2010-01 was signed on January 19, 2010, and the audit of "some" employees, including Reyes-Orta's, commenced around the month of June 2009." OSUF ¶ 95. They thus allege that "it is false that the audit . . . was conducted pursuant to Resolution 2010-01." Id.

---

[13] According to Plaintiffs, as a result of the personnel files audited during the summer of 2009, only PDP employees were dismissed. Docket # 88-1. Maybe so. But there is no evidence that only PDP employees were dismissed at the end of the audit.

The letter of intent to dismiss clearly stated that the Authority was performing and had performed multiple audits regarding previous personnel transactions. Docket # 77-11. Plaintiffs make much of the fact that Resolution 2010-01 was signed after the audit commenced. That the Executive Director's written interpretation of the Authority's rules and regulations (Resolution 2010-01) was issued after commencing the audit, does not give rise to a reasonable inference supporting Plaintiffs' allegation of having been "selectively" audited.[14] After all, the Executive Director had the authority to act in accordance with his interpretation of the laws and regulations of the Authority and disregard previous interpretations that may have been erroneous. See Banco Popular v. Municipio de Mayagüez, 126 D.P.R. 653, 664 (1990) (P.R. Offic.Trans.).

Be that as it may, the external audit report evinced the illegality of Reyes-Orta's appointment. Docket # 77-11. And Plaintiffs have not proffered any evidence from which an inference can be drawn that the Audit Report's findings and Hernández-Gregorat's decision were based on political considerations. See Reyes-Pérez, 755 F.3d at 55. Again, even under previous PDP administrations, the legality of her appointment had been questioned. There is simply no competent evidence in support of Plaintiffs' contention that the audit's target was Reyes-Orta or PDP employees, or that only PDP employees were terminated.

---

[14] Sonia Vélez-Vélez stated in her unsworn declaration that Hernández-Gregorat was pressuring Sánchez-Casanova to issue letters of intent to terminate PDP employees. Docket # 88-3, ¶¶ 4-5. In the Order at Docket # 162, the Court struck this evidence from the record. In any event, this "stray remark" is not sufficient to satisfy Plaintiffs' burden at this stage. The Mt. Healthy defense precisely deals with situations were there may be both "lawful" and "unlawful" reasons for the adverse employment action. So even if the Court accepts Vélez-Vélez's statement, the fact remains that Plaintiffs have not satisfactorily controverted the nondiscriminatory reasons proffered by Defendants.

Accordingly, Defendants have met their burden under the second prong of the <u>Mt. Healthy</u> defense, as they have demonstrated that they would have reached the same decision with regard to Reyes-Orta's employment regardless of her political affiliation.[15] "If the defendant succeeds in carrying its burden of persuasion as to its <u>Mt. Healthy</u> defense, the plaintiff may then "discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." <u>Reyes-Pérez</u>, 755 F.3d at 55. For the reasons just stated, Plaintiffs have failed to produce any competent evidence that undermines Defendants' proffered nondiscriminatory reasons for terminating Reyes-Orta. <u>Id.</u>[16]

### E.  Allegations against César Maldonado

Besides his participation in the alleged conspiracy to terminate Reyes-Orta from employment, the allegations against César Maldonado are limited to the events that allegedly transpired in the August 31, 2009 interview. <u>See</u> note 4. César Maldonado did not make any other approach to plaintiff, and his name is not mentioned anywhere else in the Complaint. <u>See</u> Exhibit 73-1, p. 218-221. The complaint was filed on May 2, 2011, <u>see</u> Docket # 1, so Defendants argue that the claims against Maldonado are time-barred. Plaintiffs did not oppose.

---

[15] Regarding Hernández-Gregorat's alleged remark "that he had dismissed a thousand employees of the agency and that it was shame that they had to be of mixed political ideology, but that he was sure that the greater number of those to be affected were members of the PDP," Plaintiffs admitted not being present in the meeting were he allegedly made the comment and thus not having personal knowledge about this matter. SUF ¶ 119; <u>see also</u> Docket # 73-1, pp. 245-6. So the court disregards this comment. <u>See</u> Fed. R. Evid. 602. In any event, this comment, if admitted, evinces that both PNP and PDP employees were affected by the results of the audit.

[16] The Court has reviewed and considered Resolution 2014-14 submitted at Docket # 150. See Docket # 163.  This resolution, however, does not affect the Court's analysis under the <u>Mt. Healthy</u> defense.

Section 1983 does not contain a limitations period. Therefore, the courts must borrow the state's statute of limitations for personal injury actions. Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 114 (1st Cir. 2009). In Puerto Rico the prescriptive period governing tort actions is one year. Id.

Since the alleged acts of discrimination committed by César Maldonado occurred on August 31, 2009, and Plaintiffs waited more than a year to file the complaint, the claims against him are time-barred. Defendants' request is thus **GRANTED**.

*F.  Conspiracy Claim*

In their complaint, Plaintiffs allege that "all of the actions taken by defendants have been done in conjunction with each other in a full fledge conspiracy to discriminate against [Reyes-Orta]." Docket # 1, ¶¶ 42 & 46.

A civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988). The plaintiff must "prove not only a conspiratorial agreement but also an actual abridgement of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1 Cir. 2001) (citing Earle, 850 F.2d at 844).

Defendants argue that the Court should dismiss this claim because Plaintiffs "failed to allege with at least some degree of particularity a factual basis supporting the existence of a conspiracy." Docket # 74, p. 25. Plaintiffs did not oppose Defendants' contention in their

opposition to the motion requesting summary judgment. <u>See</u> Docket # 87. And Plaintiffs cannot successfully rely on the mere conclusory allegations contained in their complaint. <u>Shafmaster</u>, 707 F.3d at 135. Therefore, the Court **GRANTS** Defendants' request on this score.

### G. Supplemental jurisdiction claims

In <u>Redondo Const. Corp. v. Izquierdo</u>, 662 F.3d 42, 49 (1st Cir. 2011), the First Circuit recapitulated the well settled rule that "[i]f the federal claims are dismissed before trial, . . . . the state claims should be dismissed as well." <u>Id.</u> (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726, (1966)). It reminded, however, that such general principle is no "mandatory rule to be applied inflexibly in all cases[,]" <u>id.</u> (citation omitted), punctuating that "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." <u>Id.</u> (quoting <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256-57 (1st Cir. 1996)). Such determination implicates a weighing of several factors: to wit, comity, judicial economy, convenience, and fairness. <u>Id.</u> (citations omitted).

Having evaluated the foregoing factors and at the Defendants' unopposed request, <u>see</u> Docket # 74, p. 34-35, the Court declines to exercise supplemental jurisdiction in this case and notes that comity will be better served by permitting the Commonwealth courts to resolve such issues of local concern.

**Conclusion**

For the reasons stated, Defendants' motion for summary judgment is **GRANTED**.

Plaintiffs' federal law claims are therefore **DISMISSED with prejudice**; and their state law

claims are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of September, 2014.

<div style="margin-left:40%">

s/*Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

</div>